De Saussure, Chancellor.
The complainant and his son, W. H. Burgess, a minor, suing by guardian, are entitled, by virtue of a decree of the Court of Appeals, to one-half of certain slaves which have come, by virtue of that decree, into the possession of the defendant, W. H. Heape. The latter has removed the slaves out of the State, and beyond the jurisdiction of the Court; and he has also removed himself, and is found accidentally here, and made responsible only by the process of ne exeat No objection is made to the right of the complainants to the slaves, and an account for the hire and labor of the slaves. But it is objected, that as the complainants claim in right of Mrs. Burgess, late the wife of one, and the mother of the other complainant, they are bound to administer on her estate before the Court will ^decree in their favor. The evidence proves that the complainant, the widower of Mrs. Burgess, is so extremely poor that he has not been able to give the security required bylaw, on administering. Should this bill be dismissed, and W. H. Heape be discharged from the ne exeat bond, the complainants will be utterly remediless. The rule certainly is, that generally an administration should be taken out. It has, however, been dispensed with in certain extreme cases. There is another ground on which it is more than doubtful whether an administration was necessary in this case. The decree of the Court of Appeals, which establishes the right of Mrs. Burgess and her brother, W. H. Heape, to the negroes in question, was delivered prior to the death of Mrs. Burgess, and the slaves were delivered to W. H. Heape in right of himself and his sister, Mrs. Burgess. He held them for both, and though it is not absolutely certain that this was such a reduction to possession by the husband as to attach the marital rights of Mr. Burgess to them, I am inclined to think, in such a case as this, that as between the husband and W. H. Heape, at least, it may be so considered. If not, I would postpone the decree, to give Burgess a further opportunity to take out administration.
Under my present impression, it is ordered, that the defendant, to deliver up the slaves, to which the complainants are entitled by said decree, and account for hire and labor before the Commissioner. Costs to be paid out of the estate.
From this decree the defendant appealed on the following grounds :
1. Because the decree determines, that the possession of the slaves in litigation by William H. Heape, was such a reduction to possession by Mrs. Burgess, as that the marital rights of Burgess attached on them.
2. Because the decree determines that the defendant should account, although no administration is taken out on the estate of Mrs. Burgess. “
The plaintiff also appealed and moves to modify the Chancellor’s decree, so that the costs maybe paid by the defendant *in punishment of his fraud, and to allow the plaintiffs to take their value, instead of the slaves themselves.
If personal property is not reduced into possession by the husband in the life-time of the wife, the marital rights will not attach, 3 Dess. Rep. 135-6; lb. 155; Sturginer v. Hannah, 2 N. & M’C. 147. The case of the Ordinary o. Geiger, 2 N. & M’C. 151, arose under a deed, which, from its delivery implies a right of immediate possession. As to the ground that here is a joint tenancy, and that the possession of one tenant is the possession of the other, it may be remarked, that when the defendant got possession, if he did not choose to deliver them, the right of his sister was a mere chose in action ; and this is all the right her husband can claim; he can obtain only one-third of her interest under the Act of’91.
Ifj however", the complainant is entitled to the property as between him and the defendant, he may not be entitled to it as against the creditors of Mrs. Burgess; and for this reason the Courts have laid it down as an indispensable rule that administration must be taken out, and that “ no person, though next of kin, can sue at Law or Equity for the personal property of an intestate, unless he takes out administration.” Farley v. Farley, 1 M’C. Ch. 514 ; Gregory v. Forrester, lb. 324 ; Bradford u Felder, 2 M’C. Ch. 169.
*Elmore, for the plaintiffs.
The bill in the suit in which the negroes were recovered, was in the name of the defendant and his sister Eliza — the recovery was in the name of both. The marriage was before the decree, and Mrs. Burgess’ death after it. Mrs. Burgess had then the same right to the possession that the defendant had, and Burgess stood exactly in the same right his wife did. As to the objection that the minor is not a party to this bill, it is now made for the first time. The bill first sets up the claim of Burgess to the whole by virtue of his marital rights, and if they have not attached, he then presents the claims of his son as a distributee of his mother; and it was shown on the trial, that he had been appointed a guardian.
That there must be a reduction into possession before the rights of the husband attach, is not denied. The question is, what shall be considered such a reduction into possession ? It is not necessary that there should be an actual manucaption by the husband, either personally or by his agent. The possession of an agent before or during coverture, has been held sufficient, as in the case of a guardian : Davis v. Rhame, 1 M’C. Ch. 195. And in the late case of Riley v. Riley, (not reported) decided in this Court, May, 1833, the same doctrine is held. The case of the Ordinary v. Geiger, 2 N. & M’C. Ch. 151, is still stronger, for it makes the possession of a joint-tenant in negroes, vest the undivided fourth part of them in the husband of one of the joint-tenants, even against herself, as survivor of her husband. In what did that case differ from this ? That was founded on a deed, “ giving,” says the defendant’s counsel, “a right of immediate possession. ” This is on a decree, giving an equally clear and undisputed right of possession to both Iieape and his sister. They were joint-tenants under that decree in the negroes recovered in their names ; each equally entitled, and equally secured by the Court. Heape recovered the property as agent for his sister. If a partition was neces-' sary in this case, before the marital rights would attach, so it was equally necessary in the case of the Ordinary v. Geiger; and as it was not considered necessary there, so it will not be here.
*As to the defendant’s second ground of appeal. — Should the Court determine that the marital rights of Robt. S. Burgess did not attach, then comes the question, is administration absolutely necessary before complainants can recover ? As a general rule it is necessary to have administration. It is a wise rule, intended to subserve the course of justice and protect the rights of third persons; but ljke all other rules, if inflexible, it would in some cases defeat its own object. When a case occurs where it would utterly defeat the course of justice, every principle of right and sound policy demands an exception to govern the case. Exceptions have sprung up, been recognized and acted, on. In the case of Gregorys. Forrester, 1 M’Cord, Ch. Rep. 325, Judge Nora expressly recognizes this principle; — a number of cases are there referred to in which the rule was relaxed: Burrows v. Elton, 11 Yes. 29, 39, Alsager v. Rowley, 6 Yes. 150. In a late case in our own Courts, decided at Charleston, Walker, administrator of Halls, v. John May, the following-facts existed and were considered by the Court as exempting defendant from the technical enforcement of the rule. Hall the father gave by deed four negroes to four sons and died — the widow married Robt. May. All the children in succession died under age — Robt. May sold the negroes and died, leaving his widow, and two children by her. Walker married one of the daughters, administered upon the estate of the young Halls, and filed Ms bill against the purchaser, John May. The Court below, and the Appeal Court also, decided, that as all the rights of the young Halls vested in the mother Mrs. Robt. May, no administration was necessary — that creating an exception to the rule; and to a suggestion as to creditors of the young Halls, it was held, that that was rebutted by the fact that ten or twelve years had elapsed and no claims were presented. Is this case one of such a special character as will come within the exceptions which are admissible ? In the first place let it be observed, That Burgess in his own right and as guardian of his child, represents every right that could have belonged to his wife. — Secondly, That he used every effort to procure administration and failed. — Thirdly, That the defendant has run away to Alabama, carrying away and selling *the negroes, and is only to be reached through this suit, and the bond he has given under the ne exeat writ, or in the language of the decree “ should this bill be dismissed, and W. H. Heape be discharged from the ne exeat bond, the complainants will be utterly remediless.” Could a stronger array of facts be presented showing the absolute and utter failure of justice if the technicalities of the law are to be made inflexible ? If so justice is sacrificed to forms, and rules of law relentlessly adhered to when every reason for their existence has failed. But it is objected that the rights of creditors of Mrs. Burgess may be defeated by supporting this decree. Are they in more, or less danger, from reversing it and discharging defendant ? He has run away — wasted the property — and the only possible chance of securing the fund to any person whatever is upon the ne exeat bond, to which the security is good. Again, when they put in any claims it will be full time to protect them— there are none — not one has ever been heard of. This bill was filed the 23d May, 1821. The child of the marriage is stated therein under oath at two years old, and of course Burgess had married his wife in 1817, or 1818. If she owed any debts he was responsible for them. They were paid or barred by the statute of limitations more than ten years ago. No claims of creditors can exist; but if they do, the fund is in Court, and the defendant will not object to its being paid into the Commissioner’s hands, and the creditors called in to establish them and receive payment, and the balance only paid out under the order of the Court.
If however the Court should determine that administration is necessary, it will give time to complainants to make further efforts, and in the mean time will order the collection of the amount coming to them, and to remain subject to the order of the Court.
As to the complainants’ grounds of appeal:
1. As to costs, this case has arisen entirely from the bad faith and misconduct of defendant, Wm. H. Heape, and he ought to pay the costs — at the least he should pay his own.
2. The decree should be so remodeled as to allow the complainants to °ktain the value of their negroes, as they cannot *find the negroes, they having been carried off; or the decree should order, that in case of the non-delivery of the negroes by a given day, the bond be forfeited, and collected by the Commissioner in Equity.
Smith, Attorney-General, in reply.
As to the first ground of appeal. The case of the Ordinary v. Geiger, was a case of joint tenancy, not tenancy in common. — It was a case under a deed, where the form of delivery implies a right of possession in all of the joint tenants, and these characteristics plainly distinguish it from the present case.
As an exception in this case to the rule that administration must be taken out upon an estate, before suit can be maintained, the cases of Burrows v. Elton, 11 Yes. 29, and Alsager v. Bowly, 6 lb. 750, quoted in Gregorin v. Forrester, 1 M’O. 325, were relied on, but neither of them apply. These were cases where executors or administrators existed, and the estates were represented, and they only determined that a rule existing for the benefit of creditors may be waived in favor of creditors — they determine, that creditors may maintain suit against the estate of their debtor, where the executor or administrator is a bankrupt and cannot act, or insolvent and colludes. But the case here is between a distributee and a debtor of the estate. Is the debtor responsible to him without administration, by which the rights of creditors will be protected ? The cases of Heath v. Percival, 1 P. W. 682 ; Plunket v. Penton, 2 Atk. 51.; Higginson v. Air, 1 Des. Bep. 427 ; Biddle v. Mandeville, 3 Cranch, 330; are all cases of creditors going against the heirs or the funds of the estate. The case of Walker, adm’or, of Halls, v. John May, decided in the Court of Appeals, in February, 1830, is certainly different from these, but still not applicable to this ease. In the following extract from the decree, the Court says — “ The circumstances of this case are peculiar. The intestates were all infants and incapable of contracting debts. They lived with Bobert May, the husband of their mother, whose duty it was, and who did provide for them all that was necessary, and whatever of legal obligation the law raised on them or their estates vested in him. Thus, not only negativing *the existence of any other interest, but showing the utter impossibility that any other could -exist. All the objects of an administration have therefore.been obtained. The possession of May did wrong to no one — lie only had that to which he was entitled. If he held in trust, it was for himself — if as executor, it was in his own right instead of his own wrong,” &c. This case then only determines that where there can be no creditors, a rule made for the protection of creditors must not be complied with or required. Here the presumption is, that there are creditors. The intestate was capable of contracting debts: and it appears that the complainant can give adequate security as guardian of his child but not as administrator of his wife.
As regards the plea of poverty, it is one so easily made, that it would be exceedingly dangerous in practice. It is against the insolvency of the administrator that securityship is intended to guard. But here it is contended, that because a man is insolvent he is to give no security. A man of property may act fraudulently with respect to an estate committed to his charge, and yet justice be fully done by reimbursement from his property. But he who has no property has nothing but his integrity on which others can rely. Poverty is no argument for a good character, and affords one of the strongest temptations for losing it.
Harper, J.
I understand from the decree of the Chancellor, that the slaves in question were delivered to the defendant in the lifetime of Mrs. Burgess. If so, I have no doubt the marital rights of her husband attached upon them. The case of the Ordinary v. Geiger, 2 N. & M’C. 151, is in point; and it is strengthened by that of Davis v. Rhame, 1 M’C. Ch. 195. Mrs. Burgess and her brother were, I suppose, joint-tenants of the slaves; they claimed under the same title; and it is a familiar maxim for preventing the effect of the statute of limitations, that the possession of one joint-tenant is the possession of the other. They are regarded as agents for each other, to every beneficial purpose. 3 Bac. Ab. 690, Tit. Joint-tenants and *tenants in common, H. 3. So it is said, the entry of one tenant in common is the entry of both, and must be so pleaded, Ib. H. 2. With no propriety could Mrs. Burgess’ interest in the slaves in the possession of the defendant, be called a chose in action. Her title was complete and vested. Delivery is said to be neeessary to consummate the title to personal property. But will not a delivery to one joint-tenant enure to the benefit of both ? If not in her, in whom was the title of a moiety of the slaves ?
As the slaves have been carried out of the State, so that a writ of partition could not be executed, the complainant applies, that the defendant may be directed to account for the value of the portion of them to which the complainant is entitled, in right of Ms late wife.- This is ordered and decreed accordingly. In other respects, the Chancellor’s decree is affirmed.
Johnson and O’Neall, Js., concurred.